IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ANGELA MCMULLEN                                                                           PLAINTIFF

V.                                                                    CIVIL ACTION NO. 1:15-CV-00196-SA-DAS

STARKVILLE OKTIBBEHA
CONSOLIDATED SCHOOL DISTRICT, et al.                                                     DEFENDANTS

MEMORANDUM OPINION

The individual Defendants in this public school employment action have moved for summary judgment on the basis of qualified immunity.[1] The Court has considered the motion, responses, record, and pertinent authorities, and finds as follows:

*Factual and Procedural Background*

Angela McMullen transferred from Columbus Municipal School District to Starkville Oktibbeha Consolidated School District during the 2013-2014 school year to serve as a special education instructor at Armstrong Middle School. The District renewed her employment for the 2014-2015 school year, and McMullen commenced teaching sixth grade science at Armstrong.

In February 2015, McMullen and her mother began experiencing medical issues, and McMullen anticipated that she may miss work in the near future. She twice emailed District employees Kelly Smith and Elsie Hopkins, requesting paperwork for a potential absence covered by the Family Medical Leave Act ("FMLA"). Hopkins emailed back, stating that McMullen was not eligible for FMLA paperwork unless she had already missed four consecutive days of work.

As McMullen anticipated, she missed a significant amount of work beginning April 16. Armstrong Principal Timothy Bourne emailed McMullen on April 23, informing her that paperwork for FMLA leave should have been submitted prior to her absence, and that because

---

[1] All discovery unrelated to qualified immunity has been stayed pending today's ruling.

she had not done so, she was required to present a doctor's excuse for the time she had missed. McMullen responded to Bourne's email, recounting her unsuccessful attempts to retrieve the paperwork from Hopkins in advance of her time off.

During her absence, McMullen and other Armstrong employees received an email informing them to "come by" on May 1 and sign their contracts for the 2015-2016 school year. McMullen responded and requested that Armstrong mail her contract or send it home with another teacher. McMullen never received her contract.

On May 15, McMullen notified Principal Bourne by email that she had not been cleared to return to work and was uncertain if she would be back before the end of the school year, May 26. Sometime after receiving this email, Bourne met with District Superintendent Lewis Holloway to discuss McMullen's situation. According to Holloway, in the meeting, Bourne relayed that McMullen was reprimanded following a "testing irregularity"[2] and had since "failed to return to work, failed to do lesson plans, failed to provide tests, failed to provide information to her team members, failed to do anything, and that he had students who were going unserved or being served by a substitute teacher who was not as qualified as Ms. McMullen . . . ." Based on Principal Bourne's account and on what Superintendent Holloway described as McMullen's email "notification that she had no intention to return for the rest of the year[,]" Holloway recommended Bourne draft a termination letter.

McMullen went to Armstrong on May 21 and asked to sign her contract, but was directed to discuss her employment with Superintendent Holloway. According to McMullen, Holloway informed her she had been terminated and gave her the reasons, i.e., that she had not signed her contract and that Principal Bourne had not heard anything from her in days. McMullen told Holloway this was false, as she claims to have met with Bourne around May 15 to discuss her

---

[2] The record is not specific about what this irregularity may have been.

leave of absence and medical complications. Holloway summoned Bourne to his office, where the three had an impromptu meeting. McMullen testified that she confronted Bourne and in turn, was questioned about whether she was actually receiving medical treatment.

The evidence provides an unclear picture of how the May 21 meeting was resolved. At some point, either Bourne or Holloway provided McMullen with a termination letter dated that day. On May 22, the School Board ratified the decision to terminate McMullen, deemed effective May 21.

McMullen commenced this action against the District and against Principal Bourne and Superintendent Holloway in their individual and official capacities. Although the complaint lacks some clarity, the substance of the pleadings reveals alleged violations of due process and the FMLA brought pursuant to 42 U.S.C. Section 1983. She also asserts contract-related claims under Mississippi law.

Bourne and Holloway filed the pending motion, requesting summary judgment on the basis of qualified immunity as to the federal claims,[3] as well as summary judgment on any state-law claims against them. McMullen's response only addresses federal due process. Thus, any other claims arguably listed in the complaint and raised by Defendants' summary judgment motion are abandoned. *See Sanders v. Sailormen, Inc.*, No. 3:10-CV-606-CWR, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012), *aff'd*, 506 F. App'x 303 (5th Cir. 2013). For purposes of this motion, the Court considers whether Bourne and Holloway are entitled to qualified immunity on McMullen's procedural and substantive due process claims.

---

[3] In their motion, Holloway and Bourne do not distinguish between the individual-capacity and official-capacity federal claims, but the nature of their arguments (rooted in qualified immunity) makes clear that only individual-capacity claims are at issue. Any allegations against Holloway and Bourne in their official capacities are functionally the same as her claims against the School District, and thus are not subject to dismissal on the basis of qualified immunity. *Walker v. Howard*, 2013 WL 1153428, at *2, 517 F. App'x 236 (5th Cir. 2013).

*Summary Judgment and Qualified Immunity*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted).

The normal "summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). As a defense to Section 1983 claims, "[t]he doctrine of qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). To raise qualified immunity, "[a]n officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Id*. The plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

A civil rights "plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). The second prong is satisfied "only if 'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Kimbriel v. City of Greenville, Miss.*, 2016 WL 1719108, at *2, --- F. App'x --- (5th Cir. Apr. 28, 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)*; Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014)). The Court may conduct this two-pronged inquiry in any order. *Crostley*, 717 F.3d at 422-24 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

*Discussion and Analysis*

**Procedural Due Process**

To establish her procedural due process claims, McMullen must demonstrate (1) that she was deprived of a property interest protected by the Fourteenth Amendment, and (2) that the process attendant to the deprivation was constitutionally deficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012) (quoting *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994)). The Court addresses each element in turn.

<u>Protected Property Interest</u>

Property interests do not derive from the Constitution, "but from an independent source such as state law, a contract, or other 'understandings.'" *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016) (quoting *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988)). For a property

interest in public employment, there must be more than "an abstract need, a desire, or a unilateral expectation to continued employment." *Id.* (internal quotation marks omitted). The public employee must have a "legitimate claim of entitlement . . . ." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

Multiple sources gave McMullen a clearly established property interest in continued employment with the District. As of May 21, the day of McMullen's termination, she was under a contract for employment set to expire on May 26. Though it is not certain whether McMullen would have been able to return to work during that time, she had a contractual property interest through the five days remaining on her existing contract. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1530 (5th Cir. 1993) ("[A] teacher employed under the terms of a fixed term contract as defined by [state law] has a constitutionally protected property interest in employment until the term of the contract has expired."); *Markwell v. Culwell*, 515 F.2d 1258, 1259 (5th Cir. 1975) (holding property interest limited to "year-to-year contract"); *see also Ray v. Nash*, 438 F. App'x 332, 335 (5th Cir. 2011) (recognizing expectation of employment within the contract term); *Harris v. Canton Separate Pub. Sch. Bd. of Educ.*, 655 So. 2d 898, 902 (Miss. 1995) (holding that principal's fixed-term contract created constitutionally protected property interest for remainder of the term).

McMullen also had a legitimate claim of entitlement to employment for the 2015-2016 school year. McMullen did not learn of her termination until May 21; under well-established Mississippi precedent, the failure to give her notice of non-renewal prior to April 15 functioned as "automatic renewal of [her] contract for the ensuing school year." *Burks v. Amite Cnty. Sch. Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998) (citing MISS. CODE ANN. § 37-9-105); *Noxubee Cty. Sch. Bd. v. Cannon*, 485 So. 2d 302, 304-05 (Miss. 1986); *Robinson v. Bd. of Trustees*, 477 So.

6

2d 1352, 1353-54 (Miss. 1985); *Jackson v. Bd. of Educ.*, 349 So. 2d 550, 553 (Miss. 1977); *see also Simmons v. Humphreys Cnty. Sch. Dist.*, 1994 WL 171626, at *1 n.3, 21 F.3d 1108 (5th Cir. 1994) (citing *Cannon*, 485 So.2d at 304-05). Indeed, even though McMullen was unable to sign her contract, the parties agree that the School Board actually renewed her employment.

Notwithstanding these evident sources of McMullen's property interest, Bourne and Holloway posit that any expectation of employment was defeated by Mississippi's public school employment statutes. Normally, Mississippi's Education Employment Procedures Law would have required the District to provide McMullen with written notice of her termination, MISS. CODE ANN. § 37-9-105, and a formal hearing at her request. MISS. CODE ANN. § 37-9-109(b). Defendants contend that the hearing requirement was negated in this circumstance by Mississippi Code Section 37-9-57, which deals with employees who abandon their employment. That provision provides in pertinent part:

> If any . . . licensed employee in any public school of this state shall arbitrarily or willfully breach his or her contract and abandon his or her employment without being released therefrom . . ., the contract of such . . . licensed employee shall be null and void.

MISS. CODE ANN. § 37-9-57. Bourne and Holloway both testified that McMullen's employment was severed pursuant to this Section because she failed to attend work or maintain regular communications with her superiors. According to the individual Defendants, McMullen abandoned her employment and no longer retained her property interest in employment.

Even assuming Defendants' interpretation of the Mississippi statutes is correct, their argument—that state law can nullify McMullen's property interest—was rejected by the Supreme Court over three decades ago in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Plaintiffs in *Loudermill* were terminated pursuant to a post-termination administrative review process authorized by Ohio statute. *Id.* at 535-37, 105

7

S. Ct. 1487. They argued they were entitled to pre-deprivation hearings as a matter of due process. *Id.* at 536-37, 105 S. Ct. 1487. The district court dismissed their claims, reasoning that the Ohio statute creating the plaintiffs' property interests in continued employment also specified the procedures for their discharges. *Id.* at 539-40, 105 S. Ct. 1487. Thus, in what was termed the "bitter with the sweet" approach, the lower court found that no state-created property interest could exist where appropriate state-created termination procedures were followed. *Id.*, 105 S. Ct. 1487.

The Supreme Court reversed, holding that the Ohio review procedure was irrelevant to the existence of a protected property interest. *Id.* at 541, 105 S. Ct. 1487. The Court stated that "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to *constitutionally* adequate procedures." *Id.*, 105 S. Ct. 1487 (emphasis added). In other words, "[p]roperty cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Stem v. Gomez*, 813 F.3d 205, 211 (5th Cir. 2016) (quoting *Loudermill*, 470 U.S. at 541, 105 S. Ct. 1487). In light of *Loudermill*'s clear constitutional doctrine, Mississippi law may create a property interest in continued employment, but it may not—under guise of the abandonment statute—"authorize deprivation of such an interest, once conferred, without appropriate procedural safeguards." 470 U.S. at 541, 105 S. Ct. 1487.

Applying these precepts here, McMullen had a clearly established expectation of employment predicated on her then-in-force 2014-2015 contract, the automatic renewal for 2015-2016 by operation of Mississippi law, and the actual renewal by the District School Board.

Process

Having shown a protected interest in her employment, McMullen must next demonstrate that the procedures relative to her termination were constitutionally deficient. *Wilson*, 667 F.3d at 601. Though state law may provide the basis for McMullen's property, "federal constitutional law determines what process is due." *Klingler v. Univ. of S. Mississippi*, 612 F. App'x 222, 229 (5th Cir. 2015) (citing *Loudermill*, 470 U.S. at 542, 105 S. Ct. 1487). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)). It is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

Prior to being deprived of property, a citizen is entitled to "some kind of a hearing." *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988) (quoting *Loudermill*, 470 U.S. at 542, 105 S. Ct. 1487); *see also Roth*, 408 U.S. at 569-70, 92 S. Ct. 2701. In the public employment context, "[e]laborate pretermination proceedings are not mandated . . . because of the excessive burden they would put 'on the government's interest in quickly removing an unsatisfactory employee.'" *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987) (quoting *Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487). Yet, under well-established Supreme Court and Fifth Circuit precedent, McMullen was entitled to a minimum pre-termination process of (1) "oral or written notice of the charges against her," (2) "an explanation of the employer's evidence," and (3) "an opportunity to present her side of the story." *Page*, 837 F.2d at 239 (quoting *Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487) (alterations and citations omitted).

Although not advanced by Defendants, there is a colorable argument that these minimum requirements were satisfied on May 21 when McMullen met with Bourne and Holloway. Holloway orally informed her she was being terminated, and he at least partially outlined the reasons for her termination. Further, McMullen's testimony suggests she was given the chance to explain her actions in front of Bourne and Holloway. There is a dispute, however, as to whether this meeting truly preceded her termination, or whether it occurred afterward. The record is unclear as to whether McMullen received her termination letter before, during, or after the meeting on May 21. And while the School Board did not ratify McMullen's discharge until the next day, the Board's minutes reflect an effective date of May 21. Thus, there is a question of fact on whether McMullen received any sort of hearing prior to her termination.

Furthermore, even if these "minimal pre-termination safeguards" were satisfied, McMullen would still be entitled to "a full hearing after termination." *Shaper*, 813 F.2d at 716 (citing *Loudermill*, 470 U.S. at 546-47, 105 S. Ct. 1487); *see also Kermode v. Univ. of Mississippi Med. Ctr.*, No. 3:09-CV-584-DPJ, 2011 WL 4351340, at *6 (S.D. Miss. Sept. 15, 2011), *aff'd on other grounds,* 496 F. App'x 483 (5th Cir. 2012). Among other things, this full hearing must consist of "a meaningful opportunity to be heard in h[er] own defense . . . before a tribunal that possesses some expertise and an apparent impartiality toward the charges." *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 682 (5th Cir. 1986) (citing *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985)). Defendants have made no argument, and the record is devoid of any evidence, of an opportunity for a hearing before a qualified and independent tribunal. Indeed, Defendants' position is that no hearing was necessary pursuant to the Mississippi abandonment statute, which as explained above, cannot lower the bar for federal due

process. Therefore, the Court holds for summary judgment purposes that McMullen did not receive the type of hearing that clearly established law required.

Defendants further contend that the usual notice and hearing requirements are excused in this case, relying on *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Under the *Parratt/Hudson* doctrine, a "'random, unauthorized' deprivation of property does not result in a procedural due process violation when the state provides an adequate post-deprivation proceeding." *LeBeouf v. Manning*, 575 F. App'x 374, 379 (5th Cir. 2014) (citations omitted). Bourne and Holloway submit that a state-law claim for breach of contract, which McMullen pursues here, functions as adequate process for her termination.

However, in circumstances where the government "feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation . . . remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). The Fifth Circuit has recognized three conditions for *Parratt/Hudson* to apply: (1) "the deprivation must truly have been unpredictable or unforeseeable;" (2) "the pre-deprivation procedures must have been impotent to counter the state actors' particular conduct;" and (3) "the conduct must have been 'unauthorized' in the sense that it was not within the officials' express or implied authority." *Caine v. Hardy*, 943 F.2d 1406, 1413 (5th Cir. 1991) (citing *Zinermon*, 494 U.S. 113, 132-34, 110 S. Ct. 975).

Applying these criteria, this case falls well short of a situation in which *Parratt/Hudson* may allow for a state-law civil claim to satisfy due process. McMullen's termination cannot be viewed as "unpredictable" or "unforeseeable." The testimony reflects that Bourne and Holloway

11

arrived at their decision after deliberation together during a meeting. Further, the termination of McMullen without a hearing was not unauthorized, as the School Board ratified the decision at the May 22 meeting.

Moreover, the Fifth Circuit has at least twice held the doctrine inapplicable to *Loudermill*-type cases, where a public employee sues for discharge without a hearing. *Findeisen v. N. E. Indep. Sch. Dist.*, 749 F.2d 234, 239 (5th Cir. 1984) ("In the context of the discharge of a tenured public school teacher, we perceive no *Parratt*-directed change in the essential teachings of *Roth, Sindermann* and their progeny."); *LeBeouf v. Manning*, 575 F. App'x 374, 380 (5th Cir. 2014) (holding *Parratt/Hudson* doctrine did not apply to claim of constructive discharge from public employment); *see also Zinermon*, 494 U.S. at 132, 110 S. Ct. 975 (citing *Loudermill* as the type of case where *Parratt/Hudson* doctrine does not excuse a pre-deprivation hearing). In step with these cases, the Court finds it clearly established that McMullen's state-law breach of contract action does not satisfy the mandates of due process.

McMullen has demonstrated for summary judgment purposes that the actions of Bourne and Holloway caused her termination without a sufficient hearing in violation of her clearly established Fourteenth Amendment rights. Accordingly, she has overcome both prongs of the qualified immunity defense on her procedural due process claims. *See Allen*, 815 F.3d at 244.

**Substantive Due Process**

McMullen also claims that Bourne and Holloway violated her substantive due process rights. Whereas procedural due process focuses on the "procedures the government must follow before it deprives a person of life, liberty, or property[,]" substantive due process "asks whether the government has an adequate reason" for the deprivation. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 558 (4th ed. 2011). Stated differently, the

12

substantive component of due process prohibits "certain government actions regardless of the fairness of the procedures used to implement them . . . ." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (quoting *Daniels*, 474 U.S. at 337, 106 S. Ct. 662); *Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)).

Nonetheless, federal court is usually "not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quoting *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir. 1987)). Thus, to demonstrate a violation of substantive due process "in the public employment context, the plaintiff must show that the public employer's termination of her employment was arbitrary or capricious." *Babin v. Breaux*, 587 F. App'x 105, 112 (5th Cir. 2014) (quoting *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)) (alterations omitted). So long as "the employer acted with a specific exercise of professional judgment in a non-arbitrary and non-capricious manner," there is no substantive due process violation. *Babin*, 587 F. App'x at 112 (citing *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992)) (alteration omitted). For McMullen to prevail, the "bar is high . . . ." *Jones*, 809 F.3d at 240.

The only arguments in support of McMullen's substantive due process claims are that Principal Bourne and Superintendent Holloway arbitrarily and capriciously determined she abandoned her contract and then discharged her without notice and a hearing. These contentions primarily relate to the procedures followed (discussed above), not to whether Bourne, Holloway, or the District had an adequate reason for terminating her. In the argument portion of her brief, McMullen does not articulate any facts to support her contention of arbitrary or capricious action. *See Jones*, 809 F.3d at 241 (declining to find arbitrary and capricious decision where the

record and the plaintiff's argument were "extremely underdeveloped on th[e] issue"). Nor does McMullen suggest how Defendants' conduct violated her clearly established substantive due process rights. *See Kimbriel*, 2016 WL 1719108, at *2 (affirming dismissal of Section 1983 claim where the plaintiff "failed to make *any* legal argument about whether [the officer] violated *clearly established* law").

Furthermore, the evidence does not show that the administrators' decision was clearly arbitrary or capricious. Holloway testified that McMullen was terminated for leaving her job in April, failing to communicate with the District, emailing Bourne on May 15 with expressed intent not to return for the rest of the year, and exhausting her paid leave. Bourne added that McMullen had provided no lesson plans or directions for substitute teachers, and that students were being underserved in the classroom by a substitute less qualified that McMullen.

To be sure, these reasons face some contradiction. For example, McMullen's testimony and submitted emails evince that during her absence she communicated with District personnel, including Bourne, on more than one occasion. Additionally, McMullen's May 15 email is less than absolute about whether she would return. It states:

> I was not cleared by the doctor to return to work as of today. Please acquire a sub for me for the remainder of the school year. It is possible that I may return before the end of the school year, but I am uncertain of this at this point. If anything changes I will notify you asap.

It is undisputed, however, that McMullen was absent from work from April 16 until her termination on May 21. And McMullen's testimony shows that at most, she provided lesson plans for substitute teachers only for the first week she was away. Thus, the Court cannot conclude that Bourne's and Holloway's determinations "so lacked a basis in fact that their decision to terminate h[er] was arbitrary, capricious, or taken without professional judgment." *State of Texas By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker*, 142 F.3d 813, 819

(5th Cir. 1998). That "reasonable minds could disagree on the propriety of [the plaintiff]'s termination is insufficient to defeat a public official's qualified immunity against a substantive due process claim." *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 631 (5th Cir. 2011) (quoting *Walker*, 142 F.3d at 819) (internal quotation marks omitted). Accordingly, the Court finds that the individual Defendants' actions were not objectively unreasonable in light of clearly established law. Qualified immunity shields them from liability on McMullen's substantive due process claims.[4]

*Conclusion*

For the reasons set forth above, Defendants' Motion for Summary Judgment [31] is GRANTED IN PART and DENIED IN PART. McMullen's substantive due process claims are dismissed on qualified immunity grounds. Her procedural due process claims remain. A separate order to this effect shall issue this day.

SO ORDERED, this 29th day of July, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[4] Through this qualified immunity substantive due process analysis, the Court makes no intimation about the merits of McMullen's other claims against the District, which are not before the Court at this time.